[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the Court upon the Plaintiff, Maria Joao Batista Cruz's, Complaint under the 1980 Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act (ICARA), 42 U.S.C. § 11601 et. seq.
The Plaintiff claims that her minor child, Diogo Filipe Matos Cruz, was wrongfully removed from Portugal, the child's state of "habitual residence" by the said child's father, the Defendant, Fernando Cruz. The Plaintiff seeks an order of this Court compelling the return of the said minor child to Portugal for adjudication of the custody issues. The Defendant denies that Portugal is the child's state of habitual residence and denies further that he has wrongfully abducted his child therefrom.
The essential facts are not in dispute and the court finds those facts as follows:
1. Diogo Felipe Cruz, the minor child, is an American citizen and was born on August 13, 1997 at Danbury Hospital in Danbury, Connecticut.
2. The Defendant, Fernando Cruz, is the father of Diogo and at the time of the child's birth resided in Danbury Connecticut.
3. The Plaintiff, Maria Joao Batista, is the mother of Diogo and at the time of the child's birth resided in Danbury Connecticut.
4. The Plaintiff arrived in the United States from Portugal in the summer of 1995. The Plaintiff and the Defendant resided together in Danbury from the summer of 1995 until September 29, 1998.
5. The Plaintiff and the Defendant were married on July 9, 1996 in Danbury Connecticut and were residing together, in Danbury, Connecticut, at the time of Diogo's birth. CT Page 15334-cl
6. On or about September 29, 1998, without the knowledge or consent of the Defendant father, the Plaintiff mother removed the minor child from Danbury to Portugal.
7. Thereafter, on or about February 18, 1999, the Defendant father traveled to Portugal and remained there until on or about November 16, 1999 when he removed the minor child Diogo and returned him to the United States. The Plaintiff mother asserts that this removal was a "wrongful removal" within the meaning of the Hague Convention.
8. Since November 16, 1999, the Plaintiff father and the minor child have resided continuously in the City of Danbury.
9. On or about November 15, 2000, fully 366 days after the Plaintiff mother claims that the Defendant father wrongfully removed the minor child from the state of Portugal, the Plaintiff mother commenced this Hague Convention proceeding by serving process on the Defendant father at the usual place of abode of the Defendant father.
10. For almost two years after the Plaintiff mother commenced this proceeding, and three years after the claimed wrongful removal, Plaintiff mother, failed to pursue this proceeding.
In every action seeking the return of a child under the terms of the Hague Convention, the central legal issue is whether there has been a wrongful removal or retention of a child from the child's state of habitual residence. Convention Article 3(a). A petitioner, the Plaintiff here, has the burden of proving the allegations of her Complaint by a preponderance of the evidence. 42 U.S.C. § 11603 (e) (1) (A).
Hague Convention cases are not custody determination cases. This Court will not consider custody determination criteria in rendering its decision as to whether the minor child here should be returned to Portugal under the provisions of the Hague Convention and ICARA.
The issue presented in a Hague Convention case for return of a minor child are:
1. Has there been a wrongful removal or retention
2. Is the child under the age of 18 years
 3. Has the child been removed or retained from his or her habitual residence CT Page 15334-cm
 4. Was the removal or wrongful retention of the child committed in violation of the "custody rights" of the "left behind" parent.
The Court's analysis of this case has been limited to determining whether the minor child has been removed or retained from his "habitual residence" in violation of the custody rights of the "left behind" parent.
The facts as found by this Court and as set forth herein above disclose that there were two "removals" of the minor child from different states of residence during the minor child's life.
The first "removal" was the removal of the minor child by the Plaintiff mother from the United States to Portugal on September29, 1998. Said removal was clearly and unequivocally without the knowledge or consent of the Defendant father. It is equally as clear that the said removal was from the minor child's then state of habitual residence, the United States of America. The child was born in the United States of America and at the time of his removal therefrom at the age of 13 months, the child had never resided anywhere but in Danbury, Connecticut within the United States of America.
Said first removal was clearly in violation of the custody rights of the left behind Defendant father. Had the Defendant father within the one year statute of limitations period commenced his own Hague Convention petition, this Court would have granted the petition and ordered the return of the child from Portugal to the United States for a determination of the custody and visitation issues. For reasons known only to the Defendant father though, he did not commence a Hague Convention proceeding within the time period allowed by law.
While the Defendant father failed to commence his own Hague Convention proceeding, the facts and circumstances surrounding the minor child's initial removal from the United States of America to Portugal do have a significant bearing on whether the Plaintiff mother has been able to sustain her burden of proving that the second removal of the minor child — the removal of the minor child from Portugal to the United States of America by the Defendant father on November 16, 1999 — was a wrongful removal or retention, from the minor child's state of habitual residence within the meaning of the Hague Convention.
"Habitual residence" is not defined within the Hague Convention. Determination of "habitual residence is always a question of fact for the Court. An often quoted definition of "habitual residence" comes from a British case, In Re Bates, a 1989 case from the Royal Courts of Justice. CT Page 15334-cn The Bates case provides that to establish habitual residence there must be a degree of "settled purpose." In other words, the purpose of living where one lives must have a sufficient degree of continuity to be properly described as "settled" in order for a court to make a determination of habitual residence.
Habitual residence cannot change simply as a result of a wrongful abduction. Here, there is no doubt that the Plaintiffs removal of the minor child from the United States to Portugal was a wrongful abduction. The child's habitual residence cannot and did not become Portugal simply as a result of the Plaintiff mother removing the child to Portugal. There must be additional facts upon which a Court can base a finding that Portugal is the state of habitual residence of the minor child in this matter.
The facts upon which the Plaintiff mother would have this Court rely in rendering its determination as to habitual residence include a claim that while the mother and child were residing in Portugal, the Defendant father commenced a divorce action in the Portugese court system; that the Defendant father traveled to Portugal and started working in Portugal; that the Defendant father submitted to the jurisdiction of the Portugese courts, converted a so-called "litigious" divorce to a "divorce by consent" which ultimately resulted in the entry of a purported "initial custody determination" by the Portugese Court on April 22, 1999 (Trial Exhibit #2).
This Court has scrutinized Trial Exhibit #2 which includes a Portugese to English translation of the proceedings in the Portugese court. Although the Plaintiff characterizes the exhibit as an "order," a review of the exhibit discloses that only a portion of the exhibit constitutes an order. Moreover, that "order" merely converts the initially filed "litigious divorce" to a "divorce by consent' and suggests that the "Petitioners should renew their divorce request after a period of reflection of three months, from this date (April 22, 1999) and within a year . . ."
The balance of the exhibit appears to be the "Minutes of the Reconciliation Procedures" to which the parties apparently submitted, either voluntarily or in accordance with the provisions of Portugese law. As a result of those reconciliation procedures it appears that the parties agreed to what might form the basis of a separation agreement and divorce decree if they ultimately complied with the Magistrate's order as noted above and "renew(ed) their divorce request after a period of reflection . . ." CT Page 15334-co
The Plaintiff has failed to prove that any orders were entered as a result of the "reconciliation procedures" beyond the simple order converting the initially filed "litigious divorce" to a "divorce by consent." The Court further finds that the Plaintiff failed to provide this Court with sufficient reliable evidence upon which this Court could make any appropriate findings as to exactly what the nature of the Portugese Court proceedings were. The trial exhibits purporting to be orders of or filings made with the Portugese court were vague and ambiguous and proved to be of little value to the deliberations of this Court.
This Court can point to no order of any Portugese court that conferred any custody right upon the Plaintiff mother which right of custody is a prerequisite to this Court making a determination that the removal by the Defendant father of the minor child from Portugal to the United States was a wrongful removal or retention of the minor child in violation of the custody rights of the Plaintiff mother within the meaning of the Hague Convention.
Neither can this Court conclude that the fact that Defendant father commenced the Portugese family court proceedings, then traveled to Portugal, resided in Portugal for a period of time, started working in Portugal and then submitted to the Reconciliation Procedures of the Portugese court necessarily results in the change of the minor child's state of habitual residence from the United States of America to Portugal. It is equally as plausible for this Court to find that the Defendant father engaged in all of the foregoing conduct out of a desire to be with his child, to reconcile with his wife and return with his wife and child from Portugal to the United States of America which he has always considered to be the minor child's state of habitual residence.
While the Plaintiff mother may argue, and this Court may agree, that the Defendant father deceptively and dishonestly engaged in conduct on or about November 16, 1999 which led to the Plaintiff mother voluntarily allowing the Defendant father to remove the minor child from Portugal to the United States of America for what was purported to be a visit with the paternal grandparents, that dishonesty and deception was no less offensive than the dishonesty and deception in which the Plaintiff mother engaged when she initially removed the minor child from the United States to Portugal in September of 1998. Neither party here can be charged with good parenting or fair play. These are facts that can and should be considered by another court when it considers issues of custody and visitation.
This Court cannot find that Portugal is or was the state of habitual CT Page 15334-cp residence of the minor child, Diogo at the time of his removal from Portugal on or about November 19, 1999. To do so would ultimately result in rewarding the Plaintiff mother for engaging in the initial wrongful removal of the minor child from the United States to Portugal on September 29, 1998.
This Court also takes note of the fact that the Plaintiff here has been less than diligent in pursuing her claims under the Hague Convention and ICARA. Although the claimed wrongful abduction from Portugal is alleged to have taken place on or about November 16, 1999, the instant Hague petition was not served on the Defendant father until November 15 2000, fully 366 days after the claimed wrongful abduction. (The Court notes here and takes judicial notice of the fact that calendar year 2000 was a leap year with 29 days in the month of February 2000.)
After service of process on the Defendant father, the Plaintiff mother then waited almost two full years to prosecute the Hague action here in the Connecticut Courts. As the Defendant has argued in his post trial brief, "The child was born and spent the first 13 and a half months ofhis life in Danbury, Connecticut. He was then wrongfully taken toPortugal by his mother for 13 and a half months. His father returned himto the United States, his country of habitual residence, and he has livedhere for the last 3 years. Therefore, about 4 out of the 5 total years ofhis life have been spent in Danbury, Connecticut. Diogo has familyincluding his paternal grandmother and grandfather here, his godmother ishere, his friends are here. The only school he has ever known is here inDanbury . . . Moreover, Diogo is an American citizen and he is entitledto all the protections and opportunities that come with being a citizenof this country. Danbury is the child's home and it is the appropriatejurisdiction for the determination of custody as it is where all thepeople who know what his life has been like for the past three years arelocated. It is also noteworthy that the mother did not attempt to keep incontact with Diogo during this 3-year period. She did not telephone, sendcards or packages and visited only once for three months but during thatvisit saw the child only three brief times. She did none of these thingsdespite knowing exactly where the child was and precisely how to reachhim." The Court finds these arguments to be persuasive.
The provisions of the Hague Convention and ICARA generally require that before a court can conclude that a child is "settled" in the new environment, there is a requirement that the Plaintiff must first have failed to file the Hague action within one year of the claimed wrongful abduction. Here, the process was served and the action commenced by the Plaintiff at what can best be described as the eleventh hour, on the 366th day following the claimed wrongful abduction of the minor child CT Page 15334-cq by the Defendant father.
For purposes of analysis then under these circumstances, the question becomes, what constitutes a "year" under the Treaty and under ICARA? Is a "year" 365 days? Or, every fourth year, is a year 366 days resulting in the benefit to a Hague Convention petitioner of a "bonus day" during a leap year?
But for the extra day in the calendar year 2000, this Court would easily have concluded that the Plaintiff mother failed to commence her action within one year following the claimed abduction and that the minor child is now well settled in his "new" environment.
The facts as presented though do not require that this court make a finding as to what constitutes a "year" under the Treaty nor is the Court required to make any finding as to whether the child is now settled in his new environment. The Court finds that the Plaintiff mother has failed to sustain her burden of proving that the removal of the minor child from Portugal was a removal from the minor child's state of habitual residence so as to trigger the protection of the Hague Convention. The Court finds that the minor child, Diogo, is, always has been and was at the time of his removal from Portugal, a habitual resident of Danbury, Connecticut. The Court finds further that the Plaintiff mother has also failed to sustain her burden of proving that the minor child was removed from Portugal in violation of the Plaintiff mother's rights of custody.
Accordingly, the Petition is dismissed and the Plaintiffs request for relief under the Hague Convention is denied.
BY THE COURT
 ___________________ CARROLL, J.
CT Page 15334-cr